# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**EMYRTLE BENNETT,**

        Plaintiff,

v.

**DISTRICT OF COLUMBIA,**

        Defendant.

**Civil Action No. 1:10-CV-01680 (BJR)**

**MEMORANDUM OPINION**

**MEMORANDUM OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [34]
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [41]**

## I. INTRODUCTION

Before the Court are the parties' cross-motions for summary judgment [34] and [41]. Plaintiff Emyrtle Bennett alleges that her employer, the District of Columbia, discriminatorily terminated her because of her age and in retaliation for her prior complaints of age-based harassment. Plaintiff commenced this suit under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01, *et seq.* Upon consideration of the parties' arguments, the relevant case law, and the entire record, the Court denies the parties' respective motions for summary judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2008, the District of Columbia Public Schools ("DCPS") hired Plaintiff to work as a guidance counselor at Calvin Coolidge Senior High School ("CCSHS").[1] Pl.'s Mot.,

---

[1] Prior to this, Plaintiff had worked for DCPS in varying positions from 1994 to 1999, and then again from 2002 until October 2009, when she was fired. Pl.'s Mot., Ex. 2; Def.'s Mot. at 4.

Ex. 2. In addition to Plaintiff, Defendant hired two other counselors, Amanda Poorkhodakaram and Dawn Mayo, to work at CCSHS during the 2008–2009 school year. Def.'s Mot. at 5.

Plaintiff alleges that Poorkhodakaram called her "old fogey" and "old fashioned" on a number of occasions during the 2008–2009 school year. Pl.'s Opp'n at 10. According to Plaintiff, in September 2009, she complained about Poorkhodakaram's actions to CCSHS's principal, Thelma Jarrett,[2] and CCSHS's Assistant Principal. Pl.'s Opp'n at 10–11.

On September 10, 2009, at the beginning of the 2009-2010 school year, DCPS Chancellor Michelle Rhee issued a memorandum indicating that for budgetary reason, DCPS would conduct a Reduction-In-Force ("RIF") to "eliminate positions at schools that cannot be supported" by the school's budget. Pl.'s Mot., Ex. 9. On September 18, 2009, the Director of School Operations sent a follow up memorandum to all DCPS principals with specific instructions on implementing the RIF process (hereinafter "RIF memo"). Pl.'s Mot., Ex. 11. First, each school principal was to "identify[] the positions within the school [to be] eliminated." Pl.'s Mot., Ex. 11. In identifying these positions, principals were required to "only consider the impact that losing a particular *position* [would have on his or her] school, as opposed to any consideration of who is in such positions." Pl.'s Mot., Ex. 11. The principal would then send the positions that he or she proposed eliminating to the Director of School Operations for his review and approval. Pl.'s Mot., Ex. 11.

Once the principal received approval, he or she had to rate each staff member that held the position to be eliminated. *Id.* The principal had to base the ratings on the following criteria:

1. Office or school needs (including curriculum-specialized education, degrees, licenses, or areas of expertise), accounting for 75% of the total score;

---

[2] Jarrett assumed the position of principal for the 2009-2010 school year. During the prior school year she had been the assistant principal. Pl.'s Mot., Ex. 3 at 12-13.

2. Significant relevant contributions, accomplishments or performance, accounting for 10% of total score; and

3. Relevant supplemental professional experience as demonstrated on the job, accounting for 10% of total score.

Pl.'s Mot., Ex. 11, Attach. B (listing "Factors to be Rated by the Principal").[3] The principal had to assign each factor listed above a rating from zero (the lowest possible score) to ten (the highest possible score). Additionally, the principal was required to give a separate narrative supporting each of her ratings in the three categories listed above. Pl.'s Mot., Ex. 11. The RIF memo instructed the principals that they were not to consider age when rating the staff members. Pl.'s Mot., Ex. 11, Attach. B.

After the principals made their ratings based on the aforementioned factors, DCPS's Office of Human Resources would take into account the staff member's "length of service," which accounted for 5% of the total score. Pl.'s Mot., Ex. 11, Attach. B. Human Resources would then issue a final "weighted" ranking to each of the staff members under review, obtained by comparing the raw score of zero to ten to the number of points available, depending on the specific factor.[4] Human Resources would then issue a notice of separation to the lowest scoring employee. *Id.*

During the RIF, the principal of CCSHS, Thelma Jarrett, decided to eliminate one of the guidance counselor positions at the school. Def.'s Mot. at 6. As required under the RIF memo, all three guidance counselors (Plaintiff, Poorkhodakaram, and Mayo) received a ranking score and a supporting narrative. Pl.'s Mot., Exs. 12–14.

---

[3] The rating factors originated from the D.C. Municipal Regulations. *See* D.C. Mun. Regs. tit. 5-E, § 1503.2 (prescribing the factors to be considered in eliminating a position).

[4] For example, a raw score of one in the first factor, "office or school needs," accounting for 75% of the total score, would result in a weighted score of 7.5. *See* Pl.'s Mot., Exs. 12–14 (providing the raw and weighted scores for Plaintiff, Mayo, and Poorkhodakaram).

Plaintiff received an unweighted score of one for the first RIF Factor ("Office or School Needs"), a score of two for the second RIF Factor ("Relevant Significant Contributions, Accomplishments or Performance"), and a score of zero for the third RIF Factor ("Relevant Supplemental Professional Experience as Demonstrated on the Job"). Def.'s Mot., Ex. C at ¶¶ 36–38. After DCPS's Human Resources applied weighting to account for the varying percentages the factors were responsible for in the final score and assigned a value to Plaintiff's length of service score, Plaintiff received a total weighted score of 14.5.[5] Def.'s Mot., Ex. C at ¶ 41. Mayo's weighted score totaled 36 and Poorkhodakaram's weighted score totaled 66.5. Pl.'s Mot., Exs. 13 & 14.

In support of each score, Jarrett provided a written narrative. Pl.'s Mot., Exs. 12–14. Immediately beneath Plaintiff's score of one for "Office or School Needs," Jarrett's narrative explained that Plaintiff (1) failed to "complete academic interest inventories for all students," which is required to identify a student's needs, career interest and person and social development; (2) failed to use "data to analyze and improve the learning of students;" (3) had "unexcused documented attendance"; (4) "does not contribute to school wide initiatives such as reduction of suspensions and increased student attendance;" (5) "rarely attended the Collaborative Planning Sessions with other departments in the school to improve student performance" and "operates in isolation from the staff;" and (6) failed to "consistently model professional behavior," as she had been involved in two verbal confrontations with another staff member. Pl.'s Mot., Ex. 12. On a more positive note, Jarrett also noted that Plaintiff had "forged partnerships with community agencies, business and universities, which has contributed

---

[5] 7.5 points for Plaintiff's score of "1" in "office and school needs," 2 points for Plaintiff's score of "2" in "relevant significant contributions," and 0 points for Plaintiff's score of "0" in "relevant supplemental professional experience." Plaintiff received an additional 5 points for "years of service."

4

to an increase in the amount of students applying to college." *Id.* To support the Plaintiff's score of two for the second factor, "Relevant Significant Contributions, Accomplishments or Performance," Jarrett stated that Plaintiff had "played a role in partnering with an organization . . . that has had some success with bring[ing] awareness to college access for some students." *Id.* Finally, discussing the score of zero for the third factor, "Relevant Supplemental Professional Experience as Demonstrated on the Job," Jarrett stated that she was "unaware of any supplemental professional experience [that Plaintiff] applied to the job." *Id.* Jarrett signed and dated the Score and Narrative Reports.[6] *Id.*

Plaintiff's score was the lowest out of the three counselors, and DCPS terminated her employment. Pl.'s Mot. at 2. On October 2, 2009, Chancellor Rhee sent Plaintiff a letter notifying her that DCPS had eliminated her position due to the RIF. Pl.'s Mot., Ex. 15. Plaintiff was fifty-nine (59) years old when she received her termination letter. Pl.'s Mot. at 2 & Ex. 1 ("Plaintiff's Driver's License"). According to Plaintiff, Mayo was forty-eight (48) years old and Poorkhodakaram was twenty-five (25) years old when Defendant terminated Plaintiff's employment. Pl.'s Mot. at 3–4.

Plaintiff commenced this suit under the ADEA and the DCHRA, alleging that DCPS terminated her because of her age and in retaliation for her complaints of harassment by Poorkhodakaram.[7] The case was reassigned to the undersigned Judge on April 15, 2013. With the parties' cross-motions now ripe for review, the Court turns to the parties' arguments and the applicable legal standards.

---

[6] A Human Resources Representative also signed the Report, presumably because that Representative provided the score for the "length of service" factor.

[7] Plaintiff previously brought claims for age harassment but has now withdrawn these claims, *i.e.* counts 1 and 2. Pl.'s Opp'n at 2, n.1.

# III. ANALYSIS

## A. Legal Standard for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment if the pleadings and any affidavits or declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court "should review all of the evidence in the record . . . [and] draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[t]he mere existence of a scintilla of evidence" in support of a nonmoving party's position is not sufficient to create a genuine issue of material fact. *Anderson*, 477 U.S. at 252.

## B. Legal Standard for Age Discrimination and Retaliation Claims

Discrimination claims made pursuant to ADEA and DCHRA are analyzed in the same way as Title VII claims. *See Ford v. Mabus*, 629 F.3d 198, 201 (D.C. Cir. 2010) (ADEA); *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011) (DCHRA). First, a plaintiff must establish "a prima facie case of discrimination by a preponderance of the evidence." *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). A plaintiff establishes a prima facie case of discrimination in the context of termination of employment by demonstrating that "that he belongs in the statutorily protected age group, he was qualified for the position, he was terminated, and he was disadvantaged in favor of a younger person." *Hall v. Giant Food*, 175 F.3d 1075, 1077 (D.C. Cir. 1999). Once a

plaintiff has established a prima facie case, "the employer must then articulate a legitimate, nondiscriminatory reason for its actions." *Id.* "Once an employer has offered a legitimate reason for an employee's dismissal, the question at the summary judgment stage is whether the employee has 'produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee . . . .'" *Vatel*, 627 F.3d at 1246 (quoting *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)).

A court analyzes retaliation claims in a similar manner. Once a defendant has proffered a legitimate, nondiscriminatory reason for whatever adverse action occurred, the court asks whether a reasonable jury could infer a retaliatory motive from the evidence "either directly by showing that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009). To survive summary judgment, a plaintiff must present evidence "from which a reasonable jury could find that the employer's stated reason for the firing is pretext and any other evidence that unlawful discrimination was at work." *Barnett v. Pa Consulting Grp., Inc.*, 2013 U.S. App. LEXIS 9229, at *9-10 (D.C. Cir. May 7, 2013).

### C. Plaintiff's Motion for Summary Judgment

Plaintiff moves for judgment only with respect to counts four and five of her complaint, namely, discriminatory termination based on age in violation of the DCHRA, and discriminatory termination in violation of ADEA. Plaintiff's sole argument is that she has successfully established a prima facie case of discrimination, and that Defendant has failed to provide a legitimate, nondiscriminatory reason for Plaintiff's termination. Pl.'s Mot. at 18. Plaintiff's argues that "based on the undisputed evidence in the record, Defendant has not and cannot

7

identify who provided the numerical rankings to Plaintiff or comparators that . . . resulted in Plaintiff's termination . . . ." *Id.* at 19.

Plaintiff's argument rests on a misunderstanding of the underlying facts of the case. Valerie Jarrett, principal at the time of Plaintiff's termination, testified at deposition that she assigned the raw, unweighted scores to Plaintiff and her two coworkers. These scores ultimately resulted in Plaintiff's termination. While Jarrett did not necessarily recall the scores assigned from memory, she did recall assigning the scores, and her signature appears on the form providing the scores as well as the narratives for each score. Pl.'s Opp'n at 6-7. Further, the RIF memo clearly authorized, and indeed, required the principal, and no one else, to assign the scores to each employee. Pl.'s Mot., Ex. 11.

In making her argument, Plaintiff references Jarrett's statement that "I don't complete this part, the weighted score part. I don't complete any of this part." Pl.'s Mot. at 18. However, said statement was clearly in reference to Plaintiff's *weighted* score, which was determined after Jarrett assigned Plaintiff unweighted scores. DCPS's Office of Human Resources was to take into account the staff member's "length of service," which accounted for 5% of the total score, multiply the scores assigned by the principal for the three factors to account for the remaining 95% of the score (based on the weight of each factor), and then to issue a final ranking. Pl.'s Mot., Ex. 11, Attach. B. The only scores that had subjective components and were thus potentially subject to discriminatory intent were the unweighted scores, the scores that Jarrett unequivocally testified she provided.

Plaintiff's argument fails, as Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, namely her low scores, and has identified the person (Jarrett) who provided the scores. Accordingly, Plaintiff's motion for summary judgment is denied.

### D. Defendant's Motion for Summary Judgment

#### i. Plaintiff Establishes an Issue of Fact as to Retaliation

Defendant argues that Plaintiff "has failed to provide evidence that she engaged in protected activity," namely, reporting harassment, and that her retaliation claim fails as a matter of law. Def.'s Mot. at 15-16. Defendant contends that Plaintiff's deposition shows that she "has no clear recollection of having complained to her superiors that she was being harassed due to her age." *Id.* at 15. In response, Plaintiff insists that she told Jarrett about Poorkhodakaram's harassing behavior on several occasions. Pl.'s Opp'n at 34. Plaintiff points to the deposition of Dawn Mayo as evidence that Valerie Jarrett "actually witnessed Ms. Poorkhodakaram berate Plaintiff with an onslaught of ageist comments, such as calling her an 'old fogey.'" Pl.'s Opp'n at 34 & Ex. 5. Further, when Plaintiff was asked during deposition whether she had told "Ms. Jarrett, or a supervisor above you . . . that you felt that you were being targeted or harassed, because of your age," Plaintiff responded "I think I may have told them that up and around the time that we met with that scheduled meeting." Pl.'s Opp'n, Ex. 17 at 109. Similarly, Plaintiff stated that she thought she had "on many occasions, talked to Ms. P, Ms. Jarrett, about [Poorkhodakaram] and her inappropriate outbursts and comments . . . I'm sure that during the course of that summer we had two or three exchanges about Ms. P directly, direct responses to me, that I thought were inappropriate." Pl.'s Opp'n, Ex. 17 at 170.

Plaintiff has provided more than sufficient evidence to establish a prima facie case. At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 577 U.S. at 249. Defendant argues that Plaintiff's recollections are insufficiently "clear," implying that her language at deposition is imprecise and that this

imprecision is harmful to Plaintiff's prima facie case that she reported harassment. Such a determination is a question of credibility that is the province of a jury. The Court cannot, as a matter of law, hold that Plaintiff has failed to establish that she engaged in a protected activity.

### ii. Plaintiff Establishes an Issue of Fact as to Discrimination

Defendant argues that Plaintiff has not demonstrated a prima facie case of age-based discrimination because Plaintiff fails to establish "an inference of discrimination." Def.'s Mot. at 18-19. Defendant alleges that a year after it terminated Plaintiff's employment, additional funding permitted DCPS to hire another guidance counselor, and that Defendant ultimately hired a fifty-nine (59) year old woman to fill the position. Def.'s Mot. at 18-19. Defendant argues that this hiring decision negates Plaintiff's claims of age discrimination.

Defendant's argument fails. A plaintiff demonstrates an inference of discrimination "by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005). Plaintiff has provided evidence that Defendant terminated her employment because of the RIF score while her two fellow counselors, both younger than her in age, received higher scores on the RIF and therefore remained employed. This alone is sufficient to establish a prima facie inference of discrimination. Further, it is unclear how the district's decision to hire a person "within the same age group as Plaintiff" a year after Plaintiff was terminated is relevant to whether Defendant engaged in age-based discrimination against Plaintiff. Even if Defendant's decision to hire a fifty-nine year old woman was related to Defendant's termination of Plaintiff, which it is not, it is well established that "a plaintiff in a discrimination case need not demonstrate that she was replaced by a person outside her protected class in order to carry her burden of establishing a prima facie case . . . ." *Stella v. Mineta*, 284 F.3d 135, 146 (D.C. Cir. 2002).

Thus, the Court will not find, as a matter of law, that Plaintiff failed to establish an inference of discrimination.

> iii. **Plaintiff Has Rebutted Defendant's Nondiscriminatory Reason for Adverse Action**

Defendant asserts that it terminated Plaintiff's employment because of the RIF, and that accordingly it has put forth a legitimate non-discriminatory reason for its actions. Def.'s Mot. at 19. Indeed, a reduction in force is a legitimate, nondiscriminatory reason for termination. *See Goss v. George Washington Univ.*, 942 F. Supp. 659, 664 (D.D.C. 1996). Defendant argues that Plaintiff has failed to provide evidence from which a reasonable jury could infer that discriminatory intent motivated Defendant's termination of Plaintiff's employment.

Plaintiff argues that a reasonable juror may infer pretext due to Jarrett's "blatantly erroneous descriptions" of Plaintiff's skills, performance, and accomplishments on the RIF narrative, particularly in comparison to her coworkers Mayo and Poorkhodakaram. Pl.'s Mot. at 39. Plaintiff contends that Jarrett's narratives praised Mayo and Poorkhodakaram for things that simply were not true, and congratulated them for actions that Plaintiff should have received credit for as well. *Id.* at 41-43.

Plaintiff takes issue with Jarrett's statement that Plaintiff had "unexcused documented attendance where she is often late for her tour of duty." Pl.'s Opp'n at 40; Pl.'s Mot, Ex. 12. Plaintiff argues that Jarrett's statement is erroneous as indicated by Poorkhodakaram's testimony that Plaintiff was consistently on time. Pl.'s Opp'n at 40. In her deposition, Poorkhodakaram stated that Plaintiff notified Poorkhodakaram and Mayo when she knew that she would be late or not coming into work, and that Poorkhodakaram "assum[ed] that [the same] was communicated to [the] administration." Pl.'s Opp'n, Ex. 8 at 88:8-13. The issue of whether Jarrett was made aware of Plaintiff's late arrival or absence is a question of fact for the jury.

Further, Plaintiff attacks Jarrett's statements that Plaintiff "rarely attended the Collaborative Planning Sessions with other departments in the school to improve student performance," and that Plaintiff "operates in isolation from the Staff." Pl.'s Mot., Ex. 12. According to Plaintiff, Poorkhodakaram and Mayo's depositions provide evidence that "neither of these allegations was true and that, to the contrary, Plaintiff attended the sessions with them and worked with all of the staff." *Id.* In her deposition, Mayo expressed her opinion that Plaintiff did not work in isolation from the staff, but rather had "exemplary" rapport with the staff. Pl.'s Opp'n, Ex. 5 at 38:16-20. Furthermore, Poorkhodakaram stated that she would not agree with the statement that Plaintiff operated in isolation from the guidance counseling staff. Pl.'s Opp'n, Ex. 8 at 94:10-14. Poorkhodakaram also explained how the various tasks of a guidance counselor sometimes made it difficult for a counselor to attend the required Collaborative Planning Sessions. Pl.'s Opp'n, Ex. 8 at 78. While these statements may only reflect that Mayo and Poorkhodakaram had a different opinion than Jarrett regarding Plaintiff's collaboration with the staff and the gravity of a counselor missing Collaborative Planning Sessions, they also provide evidence from which a reasonable juror might infer that discriminatory bias influenced Jarrett's narrative evaluation of Plaintiff.

Next, Plaintiff notes that in Plaintiff's RIF narrative Jarrett reported that Plaintiff had been involved in two verbal confrontations with Poorkhodakaram, while failing to note these altercations on Poorkhodakaram's own narrative. Pl.'s Opp'n at 42. Indeed, Jarrett specified on Plaintiff's RIF Narrative that she had been "engaged in two verbal confrontations with another staff member." Pl.'s Mot., Ex. 12. While Jarrett noted on Poorkhodakaram's RIF narrative that "[o]n a few occasions, [Poorkhodakaram] had failed to model appropriate professional behavior," Jarrett did not specifically note the verbal confrontations that had taken place with

Plaintiff. Plaintiff received a score of one in the category influenced by this narrative, while Poorkhodakaram received a score of 8. Pl.'s Opp'n, Ex. 14. A reasonable juror could infer from these differences that discriminatory bias influenced Jarrett's determination of Plaintiff's narrative and score.

Plaintiff also argues that Jarrett did not give her any credit for leading a student trip to Ohio State University, while giving Poorkhodakaram all of the credit. *Id.* at 41. Jarrett did not specifically note Poorkhodakaram's involvement on student trip to Ohio State University, but did state that Poorkhodakaram "escorts students on trips out of town for college tours." Pl.'s Opp'n, Ex. 14. It is unclear what college tours Jarrett might have been referring to other than the trip to Ohio State University. Jarrett did not comment on Plaintiff's role in leading the trip to Ohio State University. *Id.* Again, a reasonable juror could infer from Jarrett's allegedly undeserved praise of Poorkhodakaram and minimization of Plaintiff's role that discriminatory bias played a role in Jarrett's writing of the narrative.

Finally, Plaintiff argues that Jarrett's discussion of Plaintiff, Mayo's, and Poorkhodakaram's "relevant supplemental professional experience as demonstrated on the job," provides an inference of discriminatory bias. In Mayo's RIF narrative, in which Mayo received an unweighted rating of two, Jarrett noted that Mayo was "enrolled in a Master's program and is beginning to incorporate group dynamic strategies into her counseling." Pl.'s Opp'n, Ex. 14. In Poorkhodakaram's RIF narrative, in which Poorkhodakaram received an unweighted rating of zero, Jarrett noted that Poorkhodakaram held a Master's Degree in Guidance Counseling and "uses some of the strategies learned in her daily practice." Pl.'s Opp'n, Ex. 14. In Plaintiff's RIF narrative, in which Plaintiff received the same unweighted rating of zero, Jarrett failed to note that, while Poorkhodakaram held only a Master's Degree, Plaintiff held a Master's Degree

13

in Guidance Counseling, a Ph.D. in Education and Counseling and a J.D. Pl.'s Opp'n at 40. In Plaintiff's narrative Jarrett wrote that she was "unaware of any supplemental professional experience [that Plaintiff] applied to the job." Pl.'s Mot., Ex. 12. Given Jarrett's position as principal and as Plaintiff's supervisor, presumably with access to Plaintiff's resume and credentials, a reasonable juror could infer that discriminatory bias motivated Jarrett's omission of Plaintiff's superior academic credentials and professional degrees, factors that might have increased Plaintiff's score.

Defendant argues that Plaintiff's reading of the evidence is insufficient to demonstrate pretext. Def.'s Reply at 5. Defendant contends the issue is not whether Jarrett was correct but whether she honestly believed the reasons given in the RIF Narrative. *Id.* It is true that, in cases of employment discrimination, once an employer has articulated a non-discriminatory explanation for its action, "the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reason it offers." *Fischbach v. District of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996). In other words, "an employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005); *see also Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1248 (D.C. Cir. 2011) (noting "the question whether [the employee] was actually at fault . . . is irrelevant if [the employer] believed she was.")

Here, however, Jarrett's combined misstatements of Plaintiff's experience and contributions provide evidence from which a reasonable juror could infer discriminatory bias. "[E]vidence indicating that an employer misjudged an employee's performance or qualifications is . . . relevant" in showing pretext if the evidence suggests that the employer's "error [was] too

obvious to be unintentional." *Fischbach*, 86 F.3d at 1183 (D.C. Cir. 1996). Jarrett was responsible for rating Plaintiff's abilities and providing an RIF rating free from discriminatory bias. According to the evidence presented by Plaintiff, Jarrett consistently underrated Plaintiff's contributions to the school, experience, and credentials, while overrating the contributions, experience, and credentials of Mayo and Poorkhodakaram. At a minimum, a reasonable juror could find that Jarrett's consistent misjudgment of Plaintiff's qualifications was "too obvious to be unintentional" and thus that the RIF process was merely a pretext for discrimination against Plaintiff.

Because Defendant has failed to demonstrate that there is no genuine issue of material fact as to whether Defendant's stated reason for terminating Plaintiff's employment was pretextual, summary judgment is inappropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [34] is DENIED. Plaintiff's Motion for Summary Judgment [41] is DENIED. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued on this same day, December 5, 2013.

*Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE